1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

11 | SIDNEY KANG, DECEASED, by and through ) his Co-Successors in Interest, KATIE YOUNG )

Case No.: 1:23-cv-01519-KES-CDB

12 | and JOHN KANG, as Co-Successors in ) Interest and individually, )

13 | Plaintiffs, )

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

14 | v. )

15 |

(Docs. 15, 21)

16 | OFFICER CUSTER; CHRISTIAN PFEIFFER; ) and DOES 1 through 10, inclusive, )

17 | Defendants. )

18

19    Plaintiffs Katie Young and John Kang, individually and as co-successors in interest to decedent

20 Sidney Kang, bring this action against Defendants Officer Custer, Warden Pfeiffer, and Does 1-10,

21 alleging failure to protect and supervisorial liability under 42 U.S.C. § 1983; negligence; negligent

22 supervision, training, hiring, and retention; wrongful death; intentional infliction of emotional distress

23 (against Officer Custer only); and a violation of the Bane Act, California Civil Code § 52.1.  Doc. 14

24 ("FAC").  Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Custer and Pfeiffer move

25 to dismiss Plaintiffs' claims for intentional infliction of emotional distress and for violation of the Bane

26 Act.  Doc. 21.   Plaintiffs filed an opposition to the motion, to which Defendants replied.  Docs. 24, 25.

27 Plaintiffs oppose the motion to dismiss the Bane Act claim, but they agree that the intentional infliction

28 of emotional distress claim should be dismissed with prejudice.  Doc. 24.  The Court found this matter

1   suitable for resolution without a hearing pursuant to Local 230(g).  Doc. 26.  For the reasons set forth

2   below, the Court grants in part and denies in part Defendants' partial motion to dismiss.[1]

3   **I.      Background**

4           The Court recites here the facts alleged in the FAC that are relevant to the instant motion to

5   dismiss.  As noted below, the Court must presume the factual allegations within the FAC to be true

6   when evaluating a motion to dismiss.  *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023)

7   (citing *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987)).

8           The instant litigation concerns the attack, and subsequent death, of Sidney Kang, an inmate at

9   Kern Valley State Prison, by two other inmates.  FAC ¶¶ 17, 19.  Kang was transferred to Kern Valley

10  State Prison around May 2014.  FAC ¶ 12.  Around April 4, 2022, Kang emailed his uncle, informing

11  him that Defendant Custer, the captain of the recreational yard, "was endangering [Kang's] life and

12  that if [Kang] gets hurt," it would be due to Defendant Custer's actions.  FAC ¶ 13.  The email further

13  stated that Defendant Custer and other correctional officers knew that Kang's group in the prison was

14  at odds with another group within the prison, that the correctional officers were favoring the other

15  group, and that "the correctional officers, including Officer Custer, were going to let one of [the

16  members of Kang's group] out to the yard against six inmates from the other group" and were going to

17  "set [Kang] up to get targeted and hurt."  FAC ¶ 13.  Kang and his uncle had several phone

18  conversations regarding Kang's concerns about his safety in the prison, during which Kang informed

19  his uncle that he was he was going to file a complaint against the correctional officers.  FAC ¶ 14.

20          The FAC alleges that Kang filed such a complaint with Kern Valley State Prison and the

21  California Department of Corrections and Rehabilitation ("CDCR").  FAC ¶ 14.  According to the

22  FAC, Kang's complaint to prison officials asserted "that his and the lives of his friend group were in

23  danger due to the conduct of the correctional officers, including Officer Custer," specifically because

24  "they would target him by placing him in the recreation yard by himself to get attacked by a rival

25  group."  FAC ¶ 14.  The FAC alleges that Defendant Pfeiffer and Defendant Custer "were aware of

26

27  [1] Defendants initially filed their motion to dismiss on March 12, 2024.  Doc. 15.  Plaintiffs refiled their
    motion to dismiss on March 25, 2024, re-noticing the hearing before the undersigned.  Doc. 21.  For
28  convenience, the Court refers below to the copy of the motion filed at Doc. 21, but both filings are
    resolved by this Order.

2

1   [Kang's] complaint(s) against the correctional officers, including Officer Custer." FAC ¶ 14. Further,

2   other members of Kang's group had filed similar complaints against Defendant Custer and other

3   correctional officers. FAC ¶ 15. The FAC alleges that Defendants "failed to conduct any

4   investigation into Mr. Kang's complaint(s) and/or prevent other rival inmates from attacking Mr.

5   Kang." FAC ¶ 14. The FAC further alleges that Defendants failed to conduct any investigation into

6   the complaints submitted by members of Kang's group. FAC ¶ 15.

7        Thereafter, on May 5, 2022, "Correctional Officer Custer and other unknown correctional

8   officers . . . plac[ed]" Kang in the recreational yard with two members of a rival group, Anthony

9   Ramirez and Michael Caldera, "without any allies and/or protection from the other inmates that [sic]

10  were out to get him." FAC ¶¶ 17, 19; *see also* FAC ¶ 17 (Kang "was taken out to the recreational

11  yard"). The correctional officers who took him to the recreational yard did not permit Kang's cellmate

12  to go with him. FAC ¶¶ 16, 17. The FAC alleges that it is against the policies of CDCR and/or Kern

13  Valley State Prison to "escort [an inmate] to the recreation yard without any allies." FAC ¶ 16. Once

14  Kang was in the yard, inmates Ramirez and Caldera attacked Kang using inmate-manufactured

15  weapons, killing him. FAC ¶ 17.

16       The FAC alleges Defendants Pfeiffer and Custer "were fully aware of rival factions inside the

17  prison" and "knew that [Kang's] friend group were rivals to the group that Anthony Ramirez and

18  Michael Caldera were part of." FAC ¶ 16. The FAC alleges that Defendants "should have never

19  allowed [Kang] to be taken to the recreation yard by himself." FAC ¶ 16. The FAC further alleges

20  that Defendants Pfeiffer and Custer "knew Anthony Ramirez's . . . tendency to assault other inmates

21  and to possess or make deadly weapons, which may be used to attac[k] other inmates" given that, in

22  2020, Ramirez assaulted an inmate and was sentenced to an additional twelve years of prison time, and

23  in 2021, Ramirez was sentenced to an additional two years of prison time for possessing or

24  manufacturing a deadly weapon. FAC ¶ 18.

25       Kang was treated for his injuries at Kern Valley State Prison, but, approximately 40 minutes

26  after the attack, he was pronounced dead at 10:41 a.m. FAC ¶ 17. The FAC alleges generally that

27  Defendants failed to provide adequate medical care or to timely summon medical care for Kang after

28

1   he was stabbed, but it does not set out any specific conduct in this regard by either Defendant in the

2   brief period between the stabbing and Kang's death.  *See, e.g.*, FAC ¶¶ 21, 72, 74.

3   **II.      Legal Standard**

4         Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

5   statement of the claim showing that the pleader is entitled to relief."  Federal Rule of Civil

6   Procedure 12(b)(6) allows a party to bring a motion to dismiss for "failure to state a claim upon which

7   relief can be granted."  To survive a motion to dismiss, a complaint must plead "sufficient factual

8   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

9   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has

10  facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

11  inference that the defendant is liable for the misconduct alleged."  *Id.* "Threadbare recitals of elements

12  of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "In assessing

13  a Rule 12(b)(6) motion to dismiss, the court must take all factual allegations as true and draw all

14  reasonable inferences in favor of the nonmoving party."  *Murguia*, 61 F.4th at 1106 (citing *Usher*, 828

15  F.2d at 561).

16        If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to

17  amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The "underlying purpose of Rule 15 [is] to

18  facilitate decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203

19  F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up).  However, a court has discretion to deny leave

20  to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure

21  to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by

22  virtue of allowance of the amendment, [or] futility of amendment." *Leadsinger, Inc. v. BMG Music*

23  *Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

24  **III.     Discussion and Analysis**

25        **A.      The Bane Act**

26        The Bane Act provides a cause of action when "[a] person or persons, whether or not acting

27  under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat,

28  intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights

1    secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or

2    laws of [California]." Cal. Civ. Code § 52.1(b). To sufficiently plead a violation of the Bane Act, "a

3    plaintiff must show (1) intentional interference or attempted interference with a state or federal

4    constitutional or legal right, and (2) the interference or attempted interference was by threats,

5    intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015) (citations

6    omitted). "The essence of a Bane Act claim is that the defendant, by the specified improper means

7    (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he

8    or she had the right to do under the law or to force the plaintiff to do something that he or she was not

9    required to do under the law." *Cornell v. City & Cnty. of S.F.*, 17 Cal. App. 5th 766, 792 (2017)

10   (internal quotations omitted).

11        Defendants assert that, to adequately state a claim under the Bane Act, Plaintiffs must allege

12   threats, intimidation, or coercion separate from the alleged constitutional violation, and that Plaintiffs'

13   Bane Act claims must be dismissed because the FAC fails to do so. *See* Doc. 21 at 2:2-4. More

14   particularly, Defendants assert that the FAC fails to allege that "Kang was unable to simply refuse to

15   go to [the] yard" or that Defendants "personally placed [Kang] on the yard that day by way of threats,

16   intimidation, and/or coercion." *Id.* at 5:17-20. Plaintiffs argue that, under *Cornell*, the FAC need not

17   allege threats, intimidation, or coercion separate from the alleged constitutional violation. Doc. 24 at

18   6:26-7:7.

19        Contrary to Defendants' argument, under the Bane Act, the offending threat, intimidation, or

20   coercion need not be independent from the coercion associated with an alleged constitutional violation

21   that is inherently coercive. *See Cornell*, 17 Cal. App. 5th at 799-800, 802 n.31 (where an unlawful

22   arrest, which is inherently coercive, is properly pleaded, plaintiff need not allege a further coercive,

23   intimidating, or threatening act). In *Cornell*, the California Court of Appeal acknowledged the case

24   law reflected confusion regarding the pleading requirements of the Bane Act and noted that the

25   decision in *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012), had been mistakenly

26   cited for the proposition that the Bane Act always "requires a showing of coercion independent from

27   the coercion inherent" in the constitutional violation. *Cornell*, 17 Cal. App. 5th at 795-801. The

28   *Cornell* court noted that "depending on the right alleged to have been interfered with, physical force is

1    not required" as part of the alleged constitutional violation for the constitutional violation to be

2    coercive.  *Id.* at 802 n.31 (citing approvingly to both *McKibben v. McMahon*, Case No. EDCV 14-

3    02171 JBG (SPx), 2015 WL 10382396, at *3 (C.D. Cal. Apr. 17, 2015) (forcing gay, bisexual, or

4    transgender inmates to accept segregated housing with fewer privileges than other inmates was

5    "coercive choice" satisfying Bane Act's coercion requirement) and *M.H. v. Cnty. of Alameda*, 90

6    F.Supp.3d 889, 898 (N.D. Cal. 2013) (deliberate indifference to prisoner's medical needs satisfied

7    coercion element of Bane Act)).

8            In such cases involving an alleged inherently coercive constitutional violation, the plaintiff

9    instead must prove that the defendant acted with "a specific intent to violate the . . . right."  *See id.* at

10   801.  The "specific intent standard" is met when (1) "the right at issue [is] clearly delineated and

11   plainly applicable under the circumstances of the case" and (2) "the defendant commit[ed] the act in

12   question with the particular purpose of depriving the citizen victim of his enjoyment of the interests

13   protected by that … right."  *Id.* at 803.  "Reckless disregard of the 'right at issue' is all that [is]

14   necessary" to prove the second prong.  *Id.* at 804.  Therefore, "if a plaintiff adequately pleads a claim

15   for deliberate indifference, which requires a pleading of reckless disregard, then he has sufficiently

16   alleged the intent required for the Bane Act claim."  *Luttrell v. Hart*, No. 5:19-cv-07300-EJD, 2020

17   WL 5642613, at *5 (N.D. Cal. Sept. 22, 2020) (citation omitted).

18           "[T]he federal court must follow [a relevant] state intermediate appellate court decision unless

19   the federal court finds convincing evidence that the state's supreme court likely would not follow it."

20   *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1042 (9th Cir. 2018) (citing *Ryman v. Sears, Roebuck &*

21   *Co.*, 505 F.3d 993, 994 (9th Cir. 2007)).  In *Reese*, the Ninth Circuit determined there was "no

22   'convincing evidence that the state's supreme court likely would not follow' *Cornell*" in its analysis of

23   the Bane Act.  *Id.* at 1043.  Accordingly, this Court will follow *Cornell*'s reasoning.  Though this is

24   not an excessive force or unreasonable seizure case, as was specifically addressed by *Cornell* and

25   discussed in *Reese*, this case resembles the federal district court cases that the *Cornell* court cited to

26   approvingly, in which no physical force was used, but where coercion was inherent in the alleged

27   violative act, and therefore, the specific intent test applied.  *See Cornell*, 17 Cal. App. 5th at 802 n.31;

28

1    *Luttrell*, 2020 WL 5642613, at *5 (coercion element of Bane Act met where an inmate adequately

2    pleaded deliberate indifference to his safety).

3         Here, Kang was an inmate in prison, an inherently coercive environment.  The FAC alleges

4    that Defendant Custer intentionally had him "placed" in the recreational yard with rivals and without

5    any allies.  The FAC alleges that Defendant Custer and other officers prevented Kang's cellmate from

6    going to the yard with him, and that this was in violation of CDCR policy.  The FAC also sufficiently

7    alleges that Defendant Pfeiffer was on notice, through Kang's prior complaint to the prison, that

8    Defendant Custer and others intended to set up an attack on Kang by other inmates.  According to the

9    FAC, Kang's complaint to prison authorities asserted that Defendant Custer intended to target him by

10   placing him in the yard by himself to be attacked, the exact situation that Plaintiffs allege ultimately

11   occurred, and that Kang communicated to his uncle his fear that the officers intended to put him on the

12   yard alone with rival inmates.  Assuming these allegations to be true, as the Court must on this motion,

13   the FAC sufficiently alleges the necessary element of coercion.  Defendants' argument that Kang

14   could have simply chosen not to go to the recreational yard is not consistent with the FAC's

15   allegations.

16        Therefore, Plaintiffs need not allege a separate threatening, coercive, or intimidating action to

17   properly plead their Bane Act claim.  Rather, they must meet the specific intent test and show that (1)

18   "the right at issue [is] clearly delineated and plainly applicable under the circumstances of the case"

19   and (2) "the defendant commit[ed] the act in question with the particular purpose of depriving the

20   citizen victim of his enjoyment of the interests protected by that … right," which can be shown by

21   pleading reckless disregard of the right.  *Cornell*, 17 Cal. App. 5th at 803, 804.

22        Here, prong one is clearly met as to the allegations concerning Kang's safety.  Plaintiffs plead

23   that Defendants violated Kang's rights under the Eighth Amendment and the California Constitution

24   "to be free from deliberate indifference to his safety and serious medical needs while in custody as an

25   inmate," and under the California Constitution "to enjoy and defend life . . . and pursue and obtain

26   safety." FAC ¶ 73.  These rights are clearly delineated and applicable under the circumstances as

27   discussed above – Kang died from injuries sustained in an attack from other inmates in the prison

28   yard, which he alleges Defendant Custer orchestrated with other correctional officers.  And he alleges

7

1    Defendant Pfeiffer failed to take any measures to prevent the attack despite being on notice of

2    Defendant Custer's intent to set up the attack.

3          Prong two is also met in this regard, as Plaintiffs adequately plead that Defendants "committed

4    the act in question with the particular purpose of depriving" Kang of the right to safety while in

5    custody under the Eighth Amendment and his rights under Article 1 of the California Constitution.

6    *See Cornell*, 17 Cal. App. 5th at 803.

7          As to Defendant Custer, Plaintiffs plead that Defendant Custer intended to and carried out a

8    plan to put Kang in danger by placing him in the recreational yard with members of a rival group

9    within the prison and without any allies.  Plaintiffs allege that Kang had expressed fear that Defendant

10   Custer was conspiring to have him harmed, and that Kang submitted at least one official complaint to

11   prison authorities alerting them to this concern.  Plaintiffs further allege that "Officer Custer plac[ed]"

12   Kang alone in the recreational yard with members of a rival group, knowingly, in violation of the

13   prison's policy.  FAC ¶ 19.  Therefore, the Court finds that the FAC adequately pleads that Defendant

14   Custer acted "with the particular purpose" of depriving Kang of the constitutional right to be free from

15   deliberate indifference to his safety under the Eighth Amendment and of his rights under Article 1 of

16   the California Constitution.  Therefore, Plaintiffs have sufficiently pleaded a claim against Defendant

17   Custer under the Bane Act as to his conduct with respect to inmate Kang's safety.

18         As to Defendant Pfeiffer, Defendants assert that Plaintiffs fail to show that he acted with "the

19   particular purpose" of depriving Kang of his constitutional rights.  The Court finds that the FAC does

20   not allege affirmative acts on Defendant Pfeiffer's part to establish plausibly that Defendant Pfeiffer

21   acted with the deliberate intention of depriving Kang of his constitutional rights; however, Plaintiffs

22   have sufficiently pleaded that Defendant Pfeiffer acted with reckless disregard of Kang's right to

23   safety such that the second prong is satisfied.

24         "The failure of prison officials to protect inmates from attacks by other inmates or from

25   dangerous conditions at the prison violates the Eighth Amendment when two requirements are met:

26   (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is,

27   subjectively, deliberately indifferent to inmate health or safety."  *Luttrell*, 2020 WL 5642613, at *3

28   (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  "Deliberate indifference entails something

8

1    more than mere negligence but is satisfied by something less than acts or omissions for the very

2    purpose of causing harm or with knowledge that harm will result." *Hearns v. Terhune*, 413 F.3d 1036,

3    1040 (9th Cir. 2005) (internal quotations omitted) (citing *Farmer*, 511 U.S. at 835).

4            Here, Plaintiffs adequately allege deliberate indifference to inmate safety as to Defendant

5    Pfeiffer.  The FAC alleges that Defendants "were fully aware of rival factions inside the prison."

6    FAC ¶ 16.   Plaintiffs further allege that Kang submitted a complaint to the prison and to CDCR

7    stating "that his and the lives of his friend group were in danger due to the conduct of the correctional

8    officers, including Officer Custer" because they planned to "target him by placing him in the

9    recreation yard by himself to get attacked by a rival group."  FAC ¶ 14.  Plaintiffs further allege that

10   Kang's group submitted other similar complaints.  The FAC alleges that Defendant Pfeiffer failed to

11   investigate or address these complaints.  The FAC further alleges that Kang was "plac[ed]" in the

12   recreational yard with rivals and was denied an ally to be present with him.  FAC ¶ 19.  He died due to

13   injuries he sustained from the attack by rival inmates on the recreational yard.

14           Therefore, Plaintiffs have sufficiently pleaded that Defendant Pfeiffer knew about the

15   increased risk to Kang's safety should he be placed in the yard with a rival group without protection or

16   allies and that he knew of Kang's concerns that Defendant Custer and other officers intended to place

17   Kang on the yard alone to be attacked by rival inmates.  Accepting the FAC's allegations as true,

18   Defendant Pfeiffer's failure to investigate Kang's complaint against the correctional officers and to

19   prevent the correctional officers from placing Kang on the yard alone with a rival group resulted in the

20   attack on Kang and his death.  Thus, Plaintiffs have sufficiently pleaded that Defendant Pfeiffer acted

21   with deliberate indifference to Kang's safety.  *See, e.g.*, *Luttrell*, 2020 WL 5642613, at *4 (deliberate

22   indifference adequately pleaded where the correctional officers "knew about the increased risk to

23   [p]laintiff's safety the longer he remained housed in the same cell as his two assailants and

24   [correctional officers'] failure to take steps to remove him from the risk resulted in his ultimate

25   victimization").  Because Plaintiffs adequately allege deliberate indifference as to Warden Pfeiffer,

26   which necessarily entails reckless disregard, Plaintiffs meet the specific intent requirement under the

27   Bane Act as to Warden Pfeiffer as to Kang's right to safety under the Eighth Amendment and his

28   rights under Article 1 of the California Constitution.  Therefore, Plaintiffs have sufficiently pleaded a

1   claim against Defendant Pfeiffer under the Bane Act as to his conduct with respect to inmate Kang's

2   safety.

3          However, the Court finds that the FAC fails to allege specific facts sufficient to establish

4   deliberate indifference by either Defendant as to Kang's serious medical needs.  The FAC alleges that

5   Kang died approximately 40 minutes after being attacked in the yard, and that he was treated at the

6   prison for his injuries during that brief period.  Plaintiffs' general allegations that Defendants failed to

7   provide adequate medical care to Kang and that Defendants "failed to timely summon medical care

8   despite knowledge of the need for immediate medical care and . . . to take reasonable action to

9   summon such medical care for Sidney Kang," FAC ¶¶ 21, 72, do "not describe the extent of the delay,

10  the circumstances surrounding the delay, or what [defendants] could reasonably have done in the

11  interim given the alleged extent of [the] injuries."  *See Miles v. Cnty. of Alameda*, Case No. 22-cv-

12  06707-WHO, 2023 WL 2766663, at *12 (Apr. 3, 2023) (finding deliberate indifference was not

13  adequately pleaded by an allegation that defendants "failed to timely summon medical care" for the

14  decedent "despite becoming aware of his life-threatening injuries and obvious need for treatment" and

15  collecting cases finding similarly).

16         Plaintiffs have adequately alleged a Bane Act claim against Defendants for violation of Kang's

17  right to be free from deliberate indifference to safety under the Eighth Amendment and violation of

18  Kang's right to safety under Article 1 of the California Constitution.  Accordingly, the Court denies

19  the motion to dismiss Plaintiffs' Bane Act claim as to both Defendants.  However, Defendants' motion

20  to dismiss is granted as to Plaintiffs' sub-claim under the Bane Act that Defendants violated Kang's

21  right to be free from deliberate indifference to serious medical needs.  As Plaintiffs may be able to

22  allege additional facts concerning their serious medical needs sub-claim under the Bane Act, the Court

23  will grant Plaintiffs leave to file a second amended complaint repleading the Bane Act claim within

24  thirty (30) days from the date of this Order.  *See, e.g.*, *Zwarg v. City of San Luis Obispo*, Case No. CV

25  21-3525-DMG (AFMx), 2022 WL 2189538, at *3-4 (Feb. 16, 2022) (dismissing Bane Act claim with

26  leave to amend when "additional allegations could cure the deficiencies").

27  ///

28  ///

**B.      Intentional Infliction of Emotional Distress**

On March 27, 2024, the parties stipulated to a dismissal with prejudice of the intentional infliction of emotional distress claim pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Doc. 22.  The Court construed the stipulation as a non-opposition to the motion to dismiss as to that claim.  Doc. 23; *see Hells Canyon Preservation Council v. U.S. Forest Service*, 403 F.3d 683, 688 (9th Cir. 2005) (Rule 41(a)(1) "does not allow for piecemeal dismissal").  Plaintiffs confirmed in their response to the motion to dismiss that they do not oppose the dismissal of the intentional infliction of emotional distress claim.  Doc. 24.  Given Plaintiffs' non-opposition to Defendants' partial motion to dismiss as to this claim, the Court need not reach the merits of the issue.  *See, e.g.*, *Sullivan v. Luna*, Case No. 2:22-cv-07910-JWH-MAA, 2023 WL 9119245, at *2 (C.D. Cal. 2023) (construing notice of non-opposition as consent to granting motion at issue).

The Court, therefore, grants Defendants' partial motion to dismiss as to the intentional infliction of emotional distress claim.

**IV.     Conclusion and Order**

Based upon the foregoing, Defendants' partial motion to dismiss, Docs. 15, 21, is **GRANTED** in part and **DENIED** in part.

Plaintiffs may file a second amended complaint consistent with this Order within thirty (30) days of the filing of the Order.

IT IS SO ORDERED.

Dated:    May 4, 2024

_____
UNITED STATES DISTRICT JUDGE

11